## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 22 2016, 8:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brian Burns,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 22, 2016

Court of Appeals Case No.
49A02-1604-CR-894

Appeal from the Marion Superior Court

The Honorable Annie Christ-Garcia, Judge

Trial Court Cause No.
49G24-1601-F6-3467

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, Brian Burns (Burns), appeals his conviction for disorderly conduct, a Class B misdemeanor, Ind. Code § 35-45-1-3(a)(2).

We affirm.

## ISSUE

Burns raises one issue on appeal, which we restate as: Whether the State established sufficient evidence to support his conviction beyond a reasonable doubt.

## FACTS AND PROCEDURAL HISTORY

At approximately 4:00 a.m. on January 26, 2016, Indianapolis Metropolitan Police Officer Molly McAfee (Officer McAfee) responded to a report of a "troubled person" at the Speedway Gas Station at 1404 West Washington Street in Indianapolis, Indiana. (Transcript p. 16). When she and other responding officers arrived, Officer McAfee observed Burns walking from the west side of the gas station's parking lot towards the officers. Burns was waving his hands in the air and yelling "at the top of his lungs." (Tr. p. 18). He was walking "in an aggressive combative" manner, "with his chest puffed out and his hands out." (Tr. p. 17). Burns was screaming, "[Y]ea I am the one you want . . . and I demand you to respect my authority you are not the authority I am the authority," and was using profanity. (Tr. p. 17). The officers tried to

calm Burns and figure out what was going on. Burns "made no attempt to listen to" them. (Tr. p. 17).

[5] While the officers repeatedly told Burns to quiet down, other people were pulling into the gas station. Some people would pull in, notice what was going on and then "pull away[,] they didn't want to stop" while other people were "gawking" and laughing. (Tr. p. 18). Despite Officer McAfee asking "multiple times" to quiet down, Burns refused. Even after being arrested and transported to jail, Burns continued to yell.

[6] On January 27, 2016, the State filed an Information, charging Burns with Count I, intimidation, a Level 6 felony; and Count II, disorderly conduct, a Class B misdemeanor. On March 26, 2016, the State filed a motion to dismiss Count I, which was granted by the trial court. On April 5, 2016, the trial court conducted a jury trial, at the close of which, the jury returned a guilty verdict. Immediately following the guilty verdict, the trial court sentenced Burns to 140 days executed.

[7] Burns now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[8] Burns contends that the State failed to establish sufficient evidence to sustain his conviction for disorderly conduct beyond a reasonable doubt. Our standard of review for sufficiency of the evidence claims is well-settled. *Tobar v. State*, 740 N.E.2d 109, 111 (Ind. 2000). In reviewing the sufficiency of the evidence, we

examine only "the probative evidence and reasonable inferences" that support the verdict. *Lock v. State*, 971 N.E.2d 71, 74 (Ind. 2012) (quoting *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)). We do not assess witness credibility, nor do we reweigh the evidence to determine if it was sufficient to support a conviction. *Lock*, 971 N.E.2d at 74. Under our appellate system, those roles are reserved for the finder of fact. *Id*. Instead, we consider only the evidence most favorable to the trial court's ruling and affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id*. This evidence need not overcome every reasonable hypothesis of innocence; it is sufficient as long as "'an inference may reasonably be drawn from it to support the verdict.'" *Id* (quoting *Drane*, 867 N.E.2d at 147).

[9] In order to establish disorderly conduct, the State was required to prove that Burns "recklessly, knowingly, or intentionally" made "unreasonable noise and continue[d] to do so after being asked to stop[.]" *See* I.C. § 35-45-6-3(a)(2). Not disputing the intent element, Burns solely focuses his challenge on the "unreasonable noise" requirement by alleging that he "did not produce context-inappropriate volume and was not too loud for the circumstances."[1] (Appellant's Br. p. 9).

---

[1] Burns does not allege that his speech could be characterized as protected political expression, directed towards criticizing an official acting under color of law and protected by Article I, Section 9 of the Indiana Constitution.

In *Price v. State*, 622 N.E.2d 954, 966 (Ind. 1993), our supreme court explained that the criminalization of "unreasonable noise" was "aimed at preventing the harm which flows from the volume" of noise. As such, "[t]he State must prove that a defendant produced decibels of sound that were too *loud* for the circumstances." *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996) (emphasis in original). "Whether the State thinks the sound conveys a good message, a bad message, or no message at all, the statute imposes the same standard: it prohibits context-inappropriate *volume*. *Id.* (emphasis in original). The *Whittington* court described different situations in which loud noise can be found unreasonable:

> It could threaten the safety of injured parties by aggravating their trauma or by distracting the medical personnel tending to them. Loud outbursts could agitate witnesses and disrupt police investigations. It could make coordination of investigations and medical treatment more difficult. Finally, loud noise can be quite annoying to others present at the scene.

*Id*.

In the instant case, the officers investigated the report of a troubled person. When they arrived on the scene, Burns approached them in an aggressive manner, waving his hands, and yelling at the top of his lungs across the gas station's parking lot. Despite the officers' numerous warnings, as testified to by Officer McAfee, Burns did not quiet down. Officer McAfee clarified that officers were present at the gas station for "[a]pproximately thirty minutes" and during that time, they told Burns to calm down at "least fifteen to twenty

times." (Tr. p. 20). Officer McAfee testified that because of Burns' noise and attitude, business at the gas station was disrupted, with some customers leaving without a purchase after observing Burns' tirade.

[12] Based on the evidence, we conclude that the State presented sufficient evidence beyond a reasonable doubt to support Burns' conviction for disorderly conduct. Not only was Burns' yelling disruptive of the officers' investigation as he "made no attempt to listen to" the officers, it also had an adverse economic impact on the gas station's business that early morning. (Tr. p. 17); *see Whittington*, 669 N.E.2d at 1367. Despite numerous warnings, Burns did not cease screaming. *See Humphries v. State*, 568 N.E.2d 1033, 1037 (Ind. Ct. App. 1991) (evidence that the officer asked defendant to stop yelling otherwise he would be placed under arrest constituted substantial evidence defendant was speaking in an unreasonably loud voice). The record reflects that Burns was yelling at least from the time the officers arrived until they left approximately thirty minutes later. Even his arrest did not deter him from continuing to make unreasonable noise. Burns' request to now find that his behavior did not rise to the level of unreasonable noise merely amounts to an invitation to reweigh the evidence, which we are not allowed to do. *See Lock*, 971 N.E.2d at 74.

## CONCLUSION

[13] Based on the foregoing, we hold that the State presented sufficient evidence beyond a reasonable doubt to sustain Burns' conviction for disorderly conduct.

[14] Affirmed.

Bailey, J. and Barnes, J. concur